204　　167
23 SC　205

# Huggins's Estate.

*Specific performance—Jurisdiction of orphans' court—Act of February 24, 1834.*

Where executors petition the orphans' court for a decree to compel the payment of purchase money of land due under an agreement made by decedent in her lifetime, the jurisdiction of the court is not ousted by an answer filed by a third party averring that the agreement of sale had been presented as a gift to such person by the decedent in her lifetime.

*Gift—Agreement to sell land—Vendor and vendee.*

An agreement in writing to sell land may be made the subject of a gift by delivery without a written assignment.

Where a vendor in an agreement in writing to sell land presents as a gift the agreement to another person, and subsequently dies, and her executors present a petition to the orphans' court for a decree to compel the payment of the purchase money, and the donee files an answer setting up the gift, and the vendees do not deny their liability, the court may award an issue to the common pleas to determine whether or not there was a gift.

In such a case the fact that the vendees will not be entitled to a deed until after the payment of the final installment of the purchase money is immaterial. The executors may make a deed, and place it in the hands of the donee as an escrow to be held by her until the last installment is paid, and then delivered to the vendees.

Argued Oct. 21, 1902. Appeal, No. 86, Oct. T., 1902, by J. A. Leatherman, executor of Ann Huggins, from decree of O. C. Washington Co., May T., 1900, No. 80, on petition for specific performance in estate of Ann Huggins, deceased. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Petition by executors for specific performance of an agreement to purchase real estate.

From the record it appeared that in August, 1899, Ann Huggins, testatrix, executed an agreement in writing by which she sold all the coal under her land in East Pike Run township, Washington county, to Thomas Lilley and Jacob Lilley for the sum of $18,225, $1,000 payable on the execution of the agreement, and $1,000 annually thereafter, until the whole was paid. Two thousand dollars were paid on account of the contract to Mrs. Huggins. On January 30, 1900, Mrs. Huggins died. On

August 13, 1900, her executors presented a petition to the orphans' court for a decree to compel Thomas Lilley and Jacob W. Lilley to pay to them installment of purchase money due under the agreement. The vendees filed an answer admitting the liability to pay the installment, but averring that it was claimed both by the executors and by Debbie West, a granddaughter of the testatrix. Debbie West also filed an answer in which she averred that the testatrix had in her lifetime presented the agreement as a gift to the respondent. The court directed an issue to the court of common pleas with Debbie West as plaintiff, and J. A. Leatherman surviving executor as defendant, to determine the ownership of the proceeds of the sale. At the trial Debbie West offered testimony which tended to show that her grandmother had given her the written agreement, saying, "There, Debbie, that's your'n. I wouldn't sell that coal if it hadn't been for you," and "You take it and put it away; that is yours."

The jury returned a verdict in favor of Debbie West.

On the preliminary question of jurisdiction, the following opinion was delivered by McIlvaine, P. J. :

The averments of the petition in this proceeding bring it within the meaning of the 15th, 16th, 17th and 18th sections of the act of assembly, approved February 24, 1834, P. L. 75; 1 Purdon's Digest, page 386. From the admissions contained in the answers filed, and the testimony submitted by the commissioner, we find these averments to be true. Therefore this court has, in the first instance, jurisdiction of the subject-matter of the controversy, which is " the enforcement of a written contract for the sale of real estate where the vendor is dead."

The answers filed set up, however, as an affirmative defense, the existence of a fact which, it is claimed, ousts that jurisdiction, to wit: that the deceased vendor in her lifetime made a gift of her interest in, to and under the written article of agreement in question, to Debbie West, who, with the vendees, has been made a respondent. And to this question we are first to direct our attention.

In the third paragraph of the answer of Thomas Lilley and Jacob W. Lilley, the vendees, it is stated they " are willing and

ready to pay the purchase money for said coal, according to the provisions of the aforesaid contract, whenever it shall be ascertained to whom payment thereof can be properly and safely made. They believe the said Debbie West is entitled to the same and it constituted no part of the estate of Ann Huggins at the time of her death, but they understand from the aforesaid petition that the above named executors make claim to said money, and they are therefore unable to know their liability and duty in the matter." In the fourth paragraph it is also stated that they "are desirous that the executors of Ann Huggins's will shall be authorized to execute a deed for said coal and to deliver it to them at the proper time." Debbie West in the third paragraph of her answer, among other things, says: "In her lifetime the said Ann Huggins gave and transferred the same to your respondent, Debbie West, for her exclusive use and benefit, and parted with all her interest, title and claim that she, the said Ann Huggins, had in and to the same."

The replication of the petitioners denies that any such gift and transfer of the interest of Ann Huggins in, to and under the written contract of sale was made by her, in her lifetime, to Debbie West.

It was not claimed in the pleadings, nor was there any testimony submitted, tending to show that Debbie West ever had any interest or title in the coal sold. Her claim is that the "contract dated the — day of June, 1899, between Ann Huggins and Thomas Lilley, for the sale of the coal therein described, did not belong to the said Ann Huggins at the time of her death, and the money due and to become due thereon are not a part of the assets of her estate," but belong to her by gift and transfer.

Before the death of Mrs. Huggins she had received of the purchase money $1,000 and the vendee had been put in possession. Taking all these facts as true it leaves the equitable title to the coal in Thomas and Jacob Lilley and the legal title in Ann Huggins, and the equitable title to the unpaid purchase money in Debbie West, and the legal title thereto in Ann Huggins (now her executors).

Ann Huggins held the legal title to the coal in trust for the vendees, to be surrendered to them when the trust terminated, to wit: when all the purchase money was paid. After the

parol gift and transfer of the agreement to Debbie West the legal title to the money to thereafter become due remained in Ann Huggins in trust for Debbie West, to be surrendered to her when the trust terminated, to wit: when the money was paid. Suppose Ann Huggins had not died and Debbie West had wished to bring suit against Thomas and Jacob Lilley to enforce the payment of the installment of the purchase money that became due June —, 1900, could she have done so? Certainly only as a use plaintiff. She would have had to claim the $1,000, not adversely to Ann Huggins but through her as a legal plaintiff. Her action could only be sustained on equitable grounds; she would necessarily have to recognize and concede the two things that we have suggested; first, that the legal title to the coal was still in Ann Huggins in trust for the vendee, and that the legal title to the purchase money was still in Ann Huggins in trust for her.

It must not be forgotten that the interest that Debbie West took was an interest in an executory contract. She does not stand in relation to the executors as a stranger claiming title to a chattel which the decedent never owned, where the sole question between the claimant and the executors would be one of title properly triable in a court of law. She needs equitable relief, not as to title but as to remedy, and that must come through the executors who occupy the trust relation that Ann' Huggins occupied before her death, and there is no doubt in our mind that the jurisdiction of the orphans' court, which is undoubted under the averments of the plaintiff's bill, is not ousted by the facts set up in the answer of Debbie West. Indeed we do not see, and the counsel have not suggested, how she could enforce the payment of the purchase money except through the executors.

And more than this, the act of 1834 in its 15th section provides expressly for a case like the one at bar; it provides first, that there shall be a written contract for the sale and conveyance of real estate where the vendor is dead (a primary jurisdictional fact existing in this case); then it provides that it shall be lawful for any one of three different parties to come into the orphans' court for a decree of specific performance; first, the executors or administrators of the decedent; second, the purchaser of such real estate, and third, or "other person interested

in such contract." Is not Debbie West interested in this contract? Could she not have filed her bill or petition in this court against Thomas and Jacob Lilley, the purchaser, and the petitioners as executors of the will of Ann Huggins, and asked for a decree for "the specific performance of the contract according to the true intent and meaning thereof," and would not this court have had jurisdiction of the subject-matter and the parties, with full power to make a decree that would protect the rights of all the parties? If so, does it change matters to have the executors move and Debbie West brought in as a respondent? Certainly not. If the court finds that the written contract was duly executed, it can decree the payment of purchase money, the delivery of the deed, and that the money be paid either to Debbie West, or the executors in trust for her, and thus protect the interest of all.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

On the return of the record from the common pleas, the following opinion was filed by McIlvaine, P. J.

On January 7, 1902, the attorneys for Debbie West moved this court to enter the final decree they had prepared, and on April 4, 1902, the attorneys for the executor of the will of Ann Huggins moved this court for a final decree in favor of their contention.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

In arriving at a conclusion as to the averments of the claim set up by Debbie West, the counsel for the defendant in their motion for a final decree, ask us to disregard the verdict of the jury rendered on the issue tried in the court of common pleas and the judgment directed to be entered thereon for three reasons:

(*a*) There were errors committed by the trial judge in the court of common pleas (giving them).

(*b*) The order for the said judgment was made upon motion of the counsel for the plaintiff in said issue, without notice to and hearing of the defendant in said issue, or his counsel, and before the transcript of the proceedings in said issue had properly been certified to this court.

(*c*) The testimony of the plaintiff in the issue was insufficient to establish a gift of the proceeds of the sale of the coal in question to her.

The first reason asks this court, substantially, to pass upon the rulings of the court of common pleas in the trial of the issue had in that court. In the first place we are of opinion that the rulings on questions of law of the trial judge in the trial of that issue were correct, and that he properly submitted the issue to the determination of the jury, and his instructions to the jury were adequate and without such error as would justify this court in disregarding the result of the trial. But should this court be required to specifically pass upon exceptions that may have been taken to the rulings of the court of common pleas during the trial had in that court? It is true we are not bound by the verdict and judgment in the issue certified to the court of common pleas, and we ought to indicate whether or not we adopt the verdict and judgment as the basis of our decree, but further than that I do not think we should be called upon to go. In other words, we cannot act as a court of appeal and find that the trial judge in the court of common pleas in his general charge to the jury and in his answer to the defendant's points committed error, and send the same issue back for a new trial with the expectation that the court of common pleas will adopt our rulings on the law of the case. If there were errors of law committed in the trial by the court of common pleas, the defendant has his right of appeal to a higher court, not only from the final decree we entered in this proceeding, but from the verdict and judgment entered in the common pleas if we adopt that verdict and judgment as the basis of our final decree: Reed's Appeal, 71 Pa. 381; Green v. Mills, 103 Pa. 22.

As to the second reason why we are asked to disregard the verdict of the jury and the judgment entered in the common pleas, it is sufficient to say that the defendant, having allowed four days to elapse without filing objections to the verdict or a motion for a new trial, was not entitled to notice and a hearing upon the plaintiff's motion for judgment. The judgment in this issue was necessary only to indicate that the controversy involved in the issue submitted for trial was at an end, and that the court of common pleas had fully performed the duty required of it by the orphans' court. The verdict of the jury before being certified back to the orphans' court should have the approval as to its regularity of the court under whose su-

pervision it was taken, and this approval is given by entering judgment. The judgment of the court is, in effect, that in the issue referred to it for trial the verdict of the jury was in favor of the plaintiff and that the defendant pay the costs of the trial; then the prothonotary certifies this judgment, with all the proceedings that led up to it, including the notes of testimony, back to the orphans' court.

The third reason why the court is asked to disregard the verdict of the jury rendered in the common pleas may be considered with defendant's motion that this court, upon the testimony filed by the commissioner before the issue was awarded, enter a decree in favor of the defendant for specific performance and that no complete and perfect gift was made by Ann Huggins to Debbie West of the proceeds payable under the contract for the sale of the coal in question.

The verdict of the jury in the court of common pleas establishes—as the case was there tried, and we adopt that verdict as being right upon the evidence introduced in that court— and the evidence in this court submitted by the commissioner on the citation for specific performance we find also establishes, that Ann Huggins, deceased, delivered in her lifetime to Debbie West, the article of agreement for the sale of the coal, executed by said decedent, and specific performance of which is sought in this proceeding, and at the time of delivery gave to her the purchase money, the payment of which said article of agreement called for, and at the time she made said delivery of said article of agreement and gave her said purchase money, she intended to vest in Debbie West the full ownership of said article of agreement and said purchase money and exclusive dominion over the same. These facts being found and legally established, was there a complete and perfect gift of the unpaid purchase money made by the decedent to Debbie West?

It cannot, we think, be controverted " that a chose in action such as notes, bonds, written contracts and the like, held by the donor may be the subject of a gift either inter vivos or mortis causa." Thornton on Gifts and Advancements, p. 232, sec. 267. Nor can it be controverted that a gift of a written contract which calls for the payment of money to the donor can be made by parol, and that a written assignment is not necessary where there is a delivery of the written contract by the donor to the

donee with the intention to make a gift of it and the money it secures.

To the objection that an unassigned written agreement calling for the payment of money to the donor cannot be made the subject of a valid gift inter vivos, it may be said:

" As a good and effectual equitable assignment of a chose in action may be made by parol and as courts of law take notice of and give effect to such assignments, there seems to be no good foundation for this objection.   It is true that the cases, which are numerous, in which such equitable assignments have been supported, are founded on assignments for a valuable consideration ; but there is little if any distinction in this respect between contracts and gifts inter vivos ; the latter, indeed, when made perfect by delivery of the thing given, are executed contracts. By delivery and acceptance the title passes, the gift becomes perfect and is irrevocable.   There is therefore no good reason why property thus acquired should not be protected as fully and effectually as property acquired by purchase.   And so we think that a gift of a chose in action, provided no claims of creditors interfere to affect its validity, ought to stand on the same footing as a sale : " Thornton on Gifts and Advancements, p. 240, sec. 271.

With these two questions out of the way, we come to another which is involved in cases of gifts inter vivos.   To complete a gift of a chose in action, such as a written contract requiring the payment of money to the donor, " there must be a purpose to give ; this purpose must be expressed in words or signs ; and it must be executed by the actual delivery of the thing given to the donee or some one for his use.   In every valid gift a present title must vest in the donee, irrevocable in the case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa."

" If there remains something for the donor to do before the title of the donee is complete, the donor may decline the further performance and resume his own."

Ann Huggins had in her possession a written contract with Thomas and Jacob W. Lilley, in which she agreed to sell and convey to them and their heirs a certain tract of coal, in consideration of which they agreed to pay her $18,225 in installments of $1,000 per annum, with interest.   She wished to give

her rights under this written agreement to her granddaughter, —that is, the right to receive and receipt for, as her own, the purchase money as it became due under this agreement. She handed the written agreement which was the evidence of the indebtedness of the Lilleys to her, to Debbie West, with the expressed purpose of then and there making a gift to her of it, and the money, the payment of which it provided for. But a deed for the coal under the terms of the written contract was not to be made by Ann Huggins until all the purchase money was paid. Does this fact take this case out of the definition of what constitutes a perfect gift of a chose in action just given? We think not.

It is argued that Ann Huggins had something yet to do, to wit: make a deed to the Lilleys, and therefore the gift to Debbie West was incomplete. It will be noticed first, that the thing Ann Huggins had to do was not a condition upon which the money was to be paid. The money was all to be paid before the deed was to be made. Ann Huggins could have, from year to year, collected these annual payments of purchase money without making a deed; why has her donee not the same right? Second, the thing that remained for Ann Huggins to do in no way affected the title of Debbie West to the purchase money. It was a matter in which the Lilleys alone were concerned and even they, as we have said, could not have demanded a deed until they paid this purchase money. At most the legal title remained in Ann Huggins only as a security to enforce the payment of the purchase money if the Lilleys refused to pay it. If Ann Huggins had to do anything in the future, it was not anything that was necessary to perfect Debbie West's title to the purchase money, " but something that alone affected the remedy that might be employed to recover the gift from a third person." The only thing left for her to do was something that under her contract she was bound to the Lilleys to do, and she could not refuse to do it to defeat either a sale or gift of the purchase money if such sale or gift had been made. A court of equity will compel her (or her executor, she being dead) to make a deed, not to perfect Debbie West's gift, but to perform her covenant with the Lilleys.

In conclusion we wish to say a word in regard to the issue awarded in this case. We believe that Debbie West had a claim

to the purchase money that could not be ignored.   If not deter-
mined in this proceeding it would come up for determination
later on.   We could have simply entered a decree of specific per-
formance and allowed this purchase money from year to year for
seventeen years to be paid to the executor, and allowed Debbie
West at the end of each year to bring an equitable action of as-
sumpsit against the executor for money had and received for
her use :   Michener v. Dale, 23 Pa. 59.   Or, after settlement,
she might have appeared in this court with her claim when distri-
bution was made :  Scott on Intestate Law, 20.   This was the
course suggested by the counsel for the executor in his written
brief.   But why, if this money is Debbie West's, should it go
into the account of the executor as money belonging to the estate
of Ann Huggins and be made subject to the charges incident
to settling the estate ?   Or, if the parties are to be put to the
expense of a jury trial in the common pleas, why wait until the
money is paid into the hands of the executor and then have Deb-
bie West bring an action of assumpsit for money had and re-
ceived against the executor every time he should receive money
that belonged to her ?   We believed that in this court we had
jurisdiction to enforce specific performance, that we had juris-
diction of the accounts of the executor and of all the persons
who were interested in the subject-matter of dispute, and we
believed that a final decree in this proceeding could be made that
would settle the matter in dispute better and more equitably
than to pursue the course suggested by the counsel of the ex-
ecutor ; and as the questions in dispute involved the ownership
of property and the course suggested by counsel would result in
a trial by a jury, and the questions in dispute being one of fact
involving the credibility of witnesses, we pursued the course we
did and sent the question of fact to the common pleas for trial,
and upon the result of that trial, as well as upon the testi-
mony filed in this court by the commissioner, we now hold that
Debbie West, and not Ann Huggins at the time of her death,
was the owner of the purchase money due and to become due
from Thomas and Jacob W. Lilley on the article of agreement
in question, and that the motion of the counsel for the executor
for a final decree in favor of his contention, filed April 4, 1902,
should be overruled.

This leaves but one other question and that is, what shall be

the form of the final decree ?   If the money in question belongs to Debbie West, the money that hereafter becomes due should be paid direct to her by Thomas and Jacob Lilley.   The deed which the executor is required to make the Lilley brothers they are not entitled to receive until they have paid all the purchase money, but it can be made now by the executor and placed in the hands of Debbie West as an escrow to be delivered by her when, and on condition that, the purchase money is paid.   The money now overdue and which, according to our former decree, has been paid or ought to have been paid to the executor, should be paid by the executor to Debbie West.   And as the decree of specific performance results in a legal adjudication of the rights of all the parties, and as the estate of Ann Huggins was unsuccessful in the only contested question before the court, we think that the costs should be equally divided between the three parties interested, to wit: the estate of Ann Huggins, Debbie West and Thomas and Jacob W. Lilley, the executor to tax as part of the costs of this proceeding the costs that he may have to pay in the court of common pleas.

*Error assigned* was the decree in favor of Debbie West.

*Boyd Crumrine*, with him *A. T. Morgan* and *E. E. Crumrine*, for appellant.

*T. Jeff Duncan*, with him *W. S. Parker* and *Winfield McIlvaine*, for appellee.

PER CURIAM, November 10, 1902:
The decree is affirmed on the opinion of the court below.